Docket 158/666

THE BOARD OF EDUCATION OF THE TOWNSHIP OF BERNARDS, a body corporate, ALBERT R. MAYO and ROMAN VON FABRICE, complainants,

*v.*

THE BOARD OF EDUCATION OF THE BOROUGH OF BERNARDSVILLE, a body corporate, and ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, defendants.

[Decided June 29th, 1948.]

*Messrs. McCarter, English & Sluder* (*Mr. Woodruff J. English,* of counsel), for the complainants.

*Mr. G. Dixon Speakman,* for the Board of Education of the Borough of Bernardsville.

JAYNE, V. C.

In this cause the factual constituents have been mutually supplied. I am requested to attribute to them their legal immanence.

On April 3d, 1905, the Township of Bernards geograph-
ically embraced the territory now enveloped by that township,
the Borough of Bernardsville, and the Borough of Far Hills.
At that time the entire area constituted for the purposes of
local government a single municipality and a single school
district. On the date mentioned Frederic P. Olcott and
his wife, Mary E. Olcott, gratuitously conveyed to the Board
of Education of the Township of Bernards a tract of land
containing approximately 26 acres together with a school
building thereon erected. The structure has ever since been
gratefully identified as the Olcott School.

The deed of conveyance "unto the said party of the second
part and to its successors forever" incorporates the following
covenants and conditions:

"And in consideration of the premises it is hereby mutually cove-
nanted and agreed by the respective parties hereto that the grant of
lands herein contained is made and received upon the following con-
ditions, that is to say:

"(1) That the property hereby conveyed shall be held and used
by the party of the second part and its successors in the management
and control of the public schools of the locality in which the same
are situated in perpetuity for non-sectarian educational purposes,
and for no other, and that the educational institutions to be established
thereon shall be free to all the children residing within the territory
now constituting the Township of Bernards who are of school age
and who may be able to avail themselves thereof.

"(2) That said property shall not be sold, mortgaged or pledged
for any purpose whatsoever; nor shall the same be leased or used
for educational or other purposes not under the control or super-
vision of the party of the second part or its said successors in the
control and management of the said public schools.

"(3) That no nuisance or nuisances shall be created or be per-
mitted to exist upon said property, or any part thereof; nor shall
any practices be permitted thereon detrimental to the public health
or morals, or injurious to the neighborhood.

"And it is hereby expressly declared to be the true intent and
meaning of these presents that upon the breach of the foregoing
conditions, or any of them, the said parties of the first part, their
heirs, executors, administrators or assigns, into and upon all and
singular the lands and premises hereby conveyed, or any part thereof,
may re-enter and the same re-possess and enjoy as in their former
estate, this conveyance or anything herein contained to the contrary
thereof in anywise notwithstanding."

The *habendum* clause of the deed reads:

"To Have and to Hold all and singular the above mentioned and described premises together with the appurtenances unto the said party of the second part and its successors in the management and control of the said public schools to the only proper use, benefit and behoof of the said party of the second part and its said successors forever."

The conveyance was duly accepted by the township board, and the premises then granted with the exception of a portion which seems to have been released from the restrictive covenants and conditions of the deed in 1933 by the heirs of the original grantors, have been ever since maintained and utilized for the purposes of public education under the direction and management of the grantee, the Board of Education of the Township of Bernards.

There have been some subsequent excisions from the former area of the township and its school district occasioned by the incorporation in 1921 of the Borough of Far Hills and the formation in 1924 of the Borough of Bernardsville. Since the acquisition of the property in 1905 two additional school buildings have been erected upon it at public expense: a grammar school was constructed in 1912, and a high school was built in 1928. Those structures have been evaluated collectively for insurance purposes at a figure in excess of $700,000. Notwithstanding the creation of the two boroughs, it is acknowledged that all of the pupils residing within the former boundaries of the township have not been denied the opportunity to attend the schools conducted on the Olcott tract. It has been the practice of the Board of Education of the Borough of Far Hills to compensate the township district for the tuition of its students who have attended the high school.

Strangely, upon the incorporation of the Borough of Bernardsville, a school district separate from that of the township was not organized. The township board of education continued to exercise an official dominion over the Olcott schools through members elected by the voters of the township and of the Borough of Bernardsville notwithstanding the circumstance that the tract of land upon which the schools were situate came within the confines of the Borough of Bernardsville.

In October, 1947, in accordance with the provisions of
*R. S. 18:5–1 et seq., N. J. S. A.,* the citizens of the Borough
of Bernardsville resolved to establish a separate school dis-
trict for the Borough of Bernardsville and on November 6th,
1947, the county superintendent of schools for Somerset
County appointed members of an *ad interim* board of educa-
tion for the borough, which body organized on November
14th, 1947. Thereafter, on December 17th, 1947, pursuant
to resolutions passed by the borough board and the township
board, a special election was held to determine whether the
two school districts should consolidate and revert to the for-
mer single school district. Although the people of the town-
ship voted in favor of reconsolidation, the voters of the bor-
ough decisively expressed their opposition to such reconsolida-
tion and favored the retention of the new school district,
which accordingly continues to exist. The present borough
board, which is the active defendant in this suit, was chosen
by the people of Bernardsville on February 10th, 1948, and
was organized on February 16th, 1948, to replace the board
appointed by the county superintendent, and continues of-
ficially to serve.

The provisions of title 18 of the Revised Statutes of New
Jersey which govern the effect and resultant consequences of
the creation of separate school districts out of a former single
school district provide for the spontaneous transfer of title,
management, and control of the school properties located in
the area of the new school district to the board of education
of the new school district. Notably these provisions, having
been enacted by *P. L. 1903 (2d Sp. Sess.), ch. 1,* approved
and effective Octcber 19th, 1903, were in existence at the
time of the making of the Olcott deed in 1905, and have
remained in force to the present time without amendment,
except for minor changes in diction introduced at the time
of the Revision of 1937. *R. S. 18:5–6, N. J. S. A.,* provides:

"Property in new district; assumption of obligations incurred
therefor.

"The board of education of a new school district shall become
vested, in its corporate capacity, with the title to all school property
real and personal in the district.

"Any indebtedness incurred for the erection, repair or purchase of any such property, for which the board of education of the school district to which such property originally belonged is liable, shall be assumed by and become the obligation of the board of education of the new district. Upon payment of such indebtedness by the district originally liable therefor, the board of education thereof may maintain an action therefor against the board of education of the new district."

*Section 18:5–5, N. J. S. A.,* provides:

"School in new district; control for current year.
"If there is a schoolhouse in the newly created district, in which school is then maintained, the board of education of the district from which the new district was set off shall have control of such school and shall pay the salaries of the teachers, janitors and other persons employed therein, until the end of the then current school year."

Although in the circumstances heretofore related the township board has exercised the governmental control over the management and administrative affairs of the Olcott schools, it is now apprehended that its power and authority so to do may by virtue of the statute terminate on June 30th, 1948, unless inhibited by an adjudication in response to the prayers of the present bill of complaint. The exigency tempts me to state that although the issues were tardily submitted to me on June 22d, 1948, I am implored to decide them on or before June 30th, 1948. I shall nevertheless endeavor to accommodate counsel.

Expediency constrains me to extract literally the following quotations from the briefs of counsel in their explanatory pertinency to the elements of the complainants' alleged cause of action and the underlying reasons for its prosecution. Counsel for the borough board has with reasonable accuracy epitomized the charges of the bill as follows:

"The bill of complaint sets forth five causes of action followed by a single set of prayers for relief. The Fifth Cause of Action is apparently framed as a bill to quiet title and the only parties thereto are the Township Board as complainant and the Borough Board as defendant. It alleges that since 1905 the Township Board has been in peaceable possession of the Olcott tract and has always claimed to own the same and that its title to said lands is denied and disputed by the

Borough Board which claims to own the same or an interest therein.

"*  *  * The Second, Third and Fourth Causes of Action in large part consist of incorporations by reference of the allegations of the First Cause of Action. The gist of said causes may be found in the following allegations of the First Cause of Action which are incorporated in the other three causes:

"Paragraph 11: alleges that the high school on the Olcott property is the only one in the area and if, when and on ownership, or management and control, or ownership, management and control pass from the Township Board to the Borough Board, the public high school students of Bernards Township will of necessity continue in attendance and the Township Board will have to pay tuition for these students to the Borough Board.

"Paragraph 16: contains the general charge that if on July 1st, 1948, the management and control of the public schools on the Olcott property pass to and are assumed by the defendant, a breach of the conditions in the deed of April 3d, 1905, will ensue and the heirs may re-enter, repossess and enjoy the Olcott property, thereby depriving the Township Board and the school children of the Township of Bernards of a high school which said children can attend.

"Paragraph 18: alleges that unless the court restrains the Borough Board from assuming the management and control of the public schools in the Olcott tract, irreparable damage will ensue, since no other high school except that on the Olcott tract is available.

"Paragraph 21: alleges that the Township Board is faced with urgent necessity and fears that unless this court restrains the Borough Board from assuming management and control of the Olcott schools on July 1st, 1948, a forfeiture may occur and irreparable damage ensue, not only to the Township Board and to the public high school students in the Township of Bernards, but also to the public school children in the other boroughs and townships which attend the Olcott schools and to the taxpayers of the affected municipalities.

"Paragraph 22: charges on behalf of the complainant tax-payers that if ownership, management and operation of the schools on the Olcott tract pass to the Borough Board, they will suffer from an increased tax rate occasioned thereby; that prior to the separation of the school districts, plans had been formulated for expansion of school facilities, including a new junior high school to be located on the Olcott property and that, if the Olcott tract passes to the Borough Board, it will be necessary for the Township Board to prepare new plans for an addtional school building and to acquire land therefor, and that these factors, as well as the increased proportional cost, can reasonably be expected to occasion additional increases in the school tax for the Township of Bernards in future years.

"Paragraph 23: Complainant Von Fabrice, as a parent of a public school student in the Township of Bernards, joins with the other complainants in charging that 'the present situation presents difficulties and dangers to the best interests of a sound educational program in Bernards Township.'

"Each of the first four causes contains concluding allegations as to the true construction of the 1905 deed and the 1903 statute, *R. S. 18:5-6,* which said conclusions are in the alternative in so far as inconsistent.

"The prayers for relief seek:

"Prayer 2: A decree

"(a) that ownership, management and control of the Olcott schools remain in the Township Board, now and after July 1st, 1948, rather than pass to the Borough Board (pursuant to Second Cause of Action); or in the alternative

"(b) that management and control of said schools remain in the Township Board, now and after July 1st, 1948, rather than pass to the Borough Board (pursuant to First Cause of Action); or in the alternative

"(c) directing the Borough Board to hold legal title to the Olcott tract as trustee, so that the Township Board may continue to control and manage said schools on and after July 1st, 1948, (pursuant to Third Cause of Action, to prevent a forfeiture).

"Prayer 3: A declaratory judgment as to the rights be-

tween the Borough Board and the Township Board to (a) ownership and legal title to the Olcott tract and schools and (b) to management and control of said tract and schools after July 1st, 1948, (pursuant to Fourth Cause of Action).

"Prayer 4: that (a) the Borough Board may set forth and specify its title, and (b) that the rights of said Boards may be fixed and settled by the Court and the Township Board be decreed to have title to, and the defendant no estate, interest or right in said lands, (pursuant to Fifth Cause of Action).

"Prayer 5: 'That the defendant Board of Education and its agents may be enjoined from taking possession of the aforesaid Olcott tract and buildings thereon, and from assuming the management and control of the schools on the aforesaid tract.' "

I take the following declaration from the brief of counsel representing the complainant:

"The bill of complaint and the affidavits elaborate upon the hardship to the complainants, the efforts of the Township Board to prevent the danger of a forfeiture under the deed of April 3d, 1905, the urgent necessity and the irreparable damage facing the complainants, the danger to the entire public school system in the larger Bernardsville area, the unavailability of other facilities in which to conduct school, and the basic dispute between the Borough and the Township. This has arisen because the Borough has 60 per cent. of the tax ratables and has paid for 60 per cent. of the cost of the school system, while many of the Borough children go to private or parochial schools, so that only 40 per cent. of the Borough children attend the public schools. The Township has sought to maintain the standard of the public schools and continue improvement in the schools despite increased costs, while the Borough has sought to reduce taxes. Inability to resolve the differences led to the creation of a separate Borough Board of Education, and the bill of complaint and affidavits allege that if the Borough assumes management and control of the Olcott schools, a forfeiture may ensue and the Olcott tract and school buildings thereon revert to the late Frederic P. Olcott's heirs and representatives."

The foregoing narrative of events with the accompanying comments would seem adequately to disclose the background from which the alleged justiciable questions are proposed. Frankly I do not regard them as particularly problematical.

Let me interpolate, however, that in the absence of any objection interposed by counsel and in recognition of the public interest inherent in the controversial issues, I refrain from commenting upon the equitable sufficiency of the cause as presented.

In summarizing my conclusions I acknowledge that I have attributed basic significance to the presumptive circumstance that the grantors at the time of the execution and delivery of their deed were aware of the state of the pertinent legislation previously enacted in 1903, and from it logically flows the inference that the grantors contemplated and probably envisioned the recent eventuality. Such a deduction furnishes both reason and purpose to the conveyance of the premises to the grantee "and its successors in the management and control of the public schools in which the same are situated * * *." Obviously the import of the word "successors" as employed in the context of the present deed is expressly defined by the grantors to be those public officials who, like the grantee, are entrusted by law with the management and control of the public schools of the locality in which the property so conveyed shall be situate.

It is therefore my conviction that the ownership and legal title to the Olcott tract and school buildings become vested by operation of law in the board of education of the new school district of the Borough of Bernardsville in its corporate capacity, subject to the restrictive covenants and conditions embodied in the Olcott deed, and that under the existing statutory law, on and after July 1st, 1948, the management and control of the property and the schools thereon conducted are conferred upon the Board of Education of the Borough of Bernardsville. *Vide, Board of Education, West Paterson* v. *Brophy, 90 N. J. Eq. 57; 106 Atl. Rep. 32; Baird* v. *Board of Recreation Commissioners, South Orange, 110 N. J. Eq. 603; 160 Atl. Rep. 537; Curtis* v. *Board of Education, 43 Kan. 138; 23 Pac. Rep. 98; Russell* v. *Town*

*of Hickory, 123 Miss. 628; 87 So. Rep. 150; 135 Miss. 184; 99 So. Rep. 897.*

The foregoing determination precludes any other relief sought by the complainants.